1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2 |   Including Professional Corporations
   | GREGORY F. HURLEY, Cal. Bar No. 126791
3 | ghurley@sheppardmullin.com
   | MICHAEL J. CHILLEEN, Cal. Bar No. 210704
4 | mchilleen@sheppardmullin.com
   | BRADLEY J. LEIMKUHLER, Cal. Bar No. 261024
5 | bleimkuhler@sheppardmullin.com
   | 650 Town Center Drive, 4th Floor
6 | Costa Mesa, California 92626-1993
   | Telephone:  714.513.5100
7 | Facsimile:   714.513.5130

8 | Attorneys for Plaintiff,
   | HARBOR FREIGHT TOOLS USA, INC.
9 |

10 |

11 |              **IN THE UNITED STATES DISTRICT COURT**

12 |          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13 |

14 | HARBOR FREIGHT TOOLS USA,        Case No.  16-cv-1438-AB-SS
    | INC.
15 |                                  **PLAINTIFF'S OPPOSITION TO**
    |                Plaintiff,        **DEFENDANTS' SPECIAL MOTION**
    |                                  **TO STRIKE**
16 | v.
    |                                  Hearing Date:   May 9, 2016
17 | CARLSON LYNCH SWEET and          Hearing Time:   10:00 a.m.
    | KILPELA LLP; KAMBERLAW,          Courtroom:      4
18 | LLC,; BENJAMIN J. SWEET,; R.
    | BRUCE CARLSON; and SCOTT
19 | A. KAMBER                        Complaint Filed:  March 1, 2016
    |                                  Trial Date:      None Set
20 |                Defendants.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF FACTS .............................................................................. 2

        A.      Defendants' Business Model. .......................................................... 2

        B.      Defendants' Demand Letter To Harbor Freight. ............................. 4

III.    LEGAL STANDARD ..................................................................................... 6

IV.     THE COURT SHOULD DENY THE SPECIAL MOTION TO STRIKE ............... 6

        A.      Defendants Have Not Met Their Threshold Showing That The
                Demand Letter Constitutes Protected Speech. ................................. 7

        B.      The Pre-Lawsuit Demand Was Not Sent For The Purpose Of
                Resolving A Real Dispute. ............................................................. 11

        C.      Conduct That Is Illegal As Matter Of Law Is Not Protected By The
                SLAPP Statute Or The Litigation Privilege. ................................. 12

V.      CONCLUSION. ........................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3  <u>Cases</u>

4  *Action Apartment Ass'n, Inc. v. City of Santa Monica*
    41 Cal. 4th 1232 (2007) ............................................................... 11

5

6  *Blanchard v. DIRECTV, Inc.*
    123 Cal. App. 4th 903 (2004) ....................................................... 13

7
   *Brill Media Co., LLC v. TCW Group, Inc.*
8   132 Cal. App. 4th 324 (2005) ....................................................... 10

9  *Carr v. Asset Acceptance, LLC*
    2011 WL 3568338 (E.D. Cal. Aug. 12, 2011) ............................... 6
10

11 *Cohen v. Brown*
    173 Cal. App. 4th 302 (2009) ....................................................... 13
12

13 *Doran v. Del Taco, Inc.*
    373 F. Supp. 2d 1028 (C.D. Cal. 2005) .......................................... 1
14

15 *Edwards v. Centex Real Estate Corp.*
    53 Cal. App. 4th 15 (1997) ........................................................... 11

16 *Eisenberg v. Alameda Newspapers, Inc.*
    74 Cal. App. 4th 1359 (1999) ....................................................... 11
17

18 *Flatley v. Mauro*
    39 Cal. 4th 299 (2006) ........................................................... 12, 13
19

20 *Flores v. Emerich & Fike*
    2007 WL 963282 (E.D. Cal. Mar. 29, 2007) .................................. 6
21

22 *Gasper v. Marie Callender Pie Shops*
    2006 U.S. Dist. LEXIS 96929 (C.D. Cal. 2006) ............................. 2

23 *Gerbosi v. Gaims, Weil, West & Epstein, LLP*
    193 Cal. App. 4th 435 (2011) ....................................................... 13
24

25 *Jay v. Mahaffey*
    218 Cal. App. 4th 1522 (2013) ..................................................... 10
26

27 *Kashian v. Harriman*
    98 Cal. App. 4th 892 (2002) ...................................................... 6, 7

28

*Lefebvre v. Lefebvre*
    199 Cal. App. 4th 696 (2011) ....................................................................... 13

*Mendoza v. Hamzeh*
    215 Cal. App. 4th 799 (2013) ....................................................................... 13

*Molski v. Mandarin Touch Rest.*
    347 F. Supp. 2d 860 (C.D. Cal. 2004) ........................................................... 1

*Navellier v. Sletten*
    29 Cal. 4th 82 (2002) ............................................................................... 6, 7

*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon*
    *Animal Cruelty USA, Inc.*
    143 Cal. App. 4th 1284 (2006) ..................................................................... 13

*Peters v. Winco Foods, Inc.*
    320 F. Supp. 2d 1035 (E.D. Cal. 2004) .......................................................... 1

*Rogers v. Home Shopping Network, Inc.*
    57 F. Supp. 2d 973 (C.D. Cal. 1999) .............................................................. 6

*Simpson v. Strong-Tie Co., Inc. v. Gore*
    49 Cal. 4th 12 (2010) ................................................................................ 10

*Soukap v. Law Offices of Herbert Hafif*
    39 Cal. 4th 260 (2006) ................................................................................. 7

*Stenehjem v. Sareen*
    226 Cal. App. 4th 1405 (2014) ..................................................................... 13

*Wilson v. Kayo Oil Company*
    535 F. Supp. 2d 1063 (S.D. Cal. 2007) ........................................................... 1

<u>Statutes</u>

29 U.S.C. § 794d.......................................................................................... 3

Americans with Disabilities Act "ADA"............................................... *passim*

Bus. & Prof. Code § 6106.2......................................................................... 14

Civ. Code §§ 55.3(a)(4), 55.31 ..................................................................... 14

Civ. Code §§ 55.3(a)(4), 55.31, 55.32(2) ...................................................... 14

Civil Code § 55.31(b) .................................................................................. 14

Unfair Competition Law ................................................................................. 7

Rehabilitation Act § 508 ............................................................................... 3

Other Authorities

28 C.F.R. § 36.104 ........................................................................................ 5

http://www.reginfo.gov/public/jsp/eAgenda
/StaticContent/201510/Statement_1100.htm .................................. 4

www.HarborFreight.com ............................................................................... 4

Rule 12 .......................................................................................................... 6

# I.    <u>INTRODUCTION</u>

Plaintiff Harbor Freight Tools USA, Inc. ("Harbor Freight" or "Plaintiff") has brought this lawsuit against Defendants Carlson Lynch Sweet and Kilpela LLP, Kamberlaw, LLC, Benjamin J. Sweet, R. Bruce Carlson, and Scott A. Kamber ("Defendants") seeking to put a stop to Defendants unlawful business practices and obtain a declaration from the Court that their website complies with the Americans with Disabilities Act ("ADA").  This dispute has nothing to do with free speech or any petition rights.  Defendants simply do not want their gravy train to end.

Unfortunately, there have been widespread reports of vexatious ADA litigation.  *See, e.g., Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 862 (C.D. Cal. 2004) (noting that marked rise in ADA lawsuits has turned ADA litigation into a "cottage industry" of "systematic extortion, designed to harass and intimidate business owners into agreeing to cash settlements"); *Peters v. Winco Foods, Inc.*, 320 F. Supp. 2d 1035, 1041 (E.D. Cal. 2004) (this type of litigation "brings into disrepute the important objectives of the ADA by instead focusing public attention on the injustices suffered by defendants forced to expend large sums to amount defenses to groundless or hypertechnical claims."); *Doran v. Del Taco, Inc.*, 373 F. Supp. 2d 1028, 1030 (C.D. Cal. 2005) (discussing and commenting on abusive ADA "shakedown schemes"); *Wilson v. Kayo Oil Company,* 535 F. Supp. 2d 1063, 1071 (S.D. Cal. 2007) (attorneys use the threat of attorneys' fees "for purposes of extorting money from the defendants."); *Molski*, 347 F. Supp. 2d at 862 ("The result of his [money-making] scheme is that the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals).").

Defendants have taken these ADA drive by suits to a whole new level. Defendants do so by sending out a large volume of nearly identical "pre-lawsuit" demand letters claiming that a businesses' website does not comply with certain "standards" and therefore violates the ADA.  In these letters, Defendants knowingly

misrepresent the obligations of a business with respect to its website.  Defendants then refuse to identify the clients they purport to represent and demand to be paid an attorney fee in order to avoid a lawsuit.

Defendants now claim they are immune from any counter-action because they are protected by the litigation privilege.  However, the litigation privilege does not extend as far as Defendants hope.  Defendants can cite no authority where pre-litigation communications was sent on behalf of a "phantom" client.  Moreover, Courts have repeatedly declined to apply the SLAPP statute or the litigation privilege to protect unlawful pre-lawsuit letters, such as the one sent to Harbor Freight in this case, that are sent in bad faith and contain knowingly false representations.  The law simply does not deprive victims of wrongful conduct, such as Harbor Freight, of a remedy.

As a result, Defendants' motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Defendants' Business Model.

Defendants exploit the ADA and bring disrepute to the disabled community in order to enrich themselves.  Defendants threaten legal action against numerous businesses and use the inherent expense of litigation to procure quick and lucrative settlements.  As the ADA only provides for injunctive relief, the sole basis for monetary relief in such actions is in the form of attorneys' fees.  *E.g. Gasper v. Marie Callender Pie Shops*, 2006 U.S. Dist. LEXIS 96929, *4 (C.D. Cal. 2006) ("The only remedy available for a violation of the Americans with Disabilities Act under a private right of action is injunctive relief.").

Defendants' business model is to send out form pre-litigation demand letters alleging that a businesses' website does not comply with the ADA.  (Dkt. 1 at ¶¶ 10-22).  To avoid the expense of litigation, the businesses often quickly settle for a fee.  Left unchecked, almost no business in the country is not subject to a potential lawsuit created from scratch and sponsored by Defendants.

1    Defendants have sent out identical "pre-litigation" letters to dozens of

2  retailers, including Harbor Freight, Adidas, Patagonia, Toys R Us, Fry's,

3  Aeropostale, Footlocker, Huntington National Bank, Hard Rock Café, The Pep

4  Boys, and VF Corp.  (Dkt. 1 at ¶ 15).  None of these letters identify who the

5  purported plaintiff is, what the plaintiff's alleged disabilities are, how or when the

6  purported plaintiff's tried to access the website, or what the alleged barriers are.

7  Without that information, Harbor Freight, or any other similarly situated business, is

8  in no position to investigate, evaluate, or take any action to determine the truth or

9  falsity of Defendants' claims.  (*Id.* at ¶ 22).  The clear implication is that Defendants

10  are targeting businesses for settlements and then finding "clients" later.  (*Id.*).

11    Instead, Defendants state that unidentified "experts" have analyzed the

12  website for purported "barriers" without explanation.[1]  (Dkt. 1-1 at 4).  In fact,

13  Defendants expressly discourage businesses, including Harbor Freight, from

14  engaging or locating their own experts or conducting any independent investigation

15  and claim that all such experts have already been retained as a result of Defendants'

16  other demands and lawsuits.  (*Id.*).

17    The reason Defendants discourage retention of an ADA expert is because they

18  knowingly misrepresent the obligations of the business in complying with the ADA.

19  First, Defendants falsely state that the website must comply with section 508 of the

20  Rehabilitation Act – which is applicable only to governmental entities.  *See* 29

21  U.S.C. § 794d ("This subsection shall apply only to electronic and information

22  technology that is procured by a Federal department or agency. . .").  Second,

23

24

_____

25  [1] In fact, Defendants' "experts" appear to be a publically available automated

26  software scanning program that was most likely run by Defendants' themselves.
   These software scanning programs scan a website for "compliance" with WCAG

27  guidelines, that are not mandated by the ADA, and there is an explicit warning that

28  these automated scans are not reliable unless combined with actual, human testing.

1  Defendants falsely state that the Web Content Accessibility Guidelines ("WCAG")

2  are legally mandated by the ADA.  (Dkt. 1 at ¶¶ 13-21).[2]

3       These letters also demand that businesses immediately retain records as

4  required by federal law.  However, because Defendants do not disclose any details

5  about the claim (*i.e.* who the alleged plaintiff is, when the plaintiff visited the site,

6  what specific pages the plaintiff was not able to access, what specific problems they

7  encountered, etc.), it is impossible for businesses to comply.  (Dkt. 1 at ¶ 20).

8  Businesses are then exposed to potential sanctions in litigation for failure to comply

9  with such demands.

10       **B.**     **Defendants' Demand Letter To Harbor Freight.**

11       Harbor Freight owns and operates the website www.HarborFreight.com.

12  (Dkt. 1 at ¶ 9).

13       On or around November 10, 2015, Defendants sent their form pre-litigation

14  demand letter to Harbor Freight.  (Dkt. 1 at ¶ 10, Exh. 1).  As is typical, the letter

15  did not disclose the identity of Defendants' alleged client, the date Defendants'

16  alleged client attempted to visit the website, the specific barriers Defendants' clients

17  allegedly experienced, or how Defendants' clients attempted to access the website.

18  (*Id.* at ¶ 11, Exh. 1).  Despite this lack of any specific claim by any identifiable

19  plaintiff with any cognizable disability, Defendants' letter threatened the filing of a

20  lawsuit against Harbor Freight but advised that, in lieu of doing so, Harbor Freight

21  could avoid the filing of the lawsuit by entering into a "Settlement Agreement", a

22  draft copy of which was provided as an attachment to the letter and similarly failed

23  to identify any client with whom Harbor Freight would be settling.  (*Id.* at ¶ 12, Exh.

24  1).  Under the draft settlement, Harbor Freight would agree to pay Defendants an

25  attorney fee to be determined, comply with various other requirements related to

26  ─────────────

27  [2] The DOJ announced in 2015 that it would not be releasing standards for website accessibility until at least 2018.  *See* http://www.reginfo.gov/public/jsp/eAgenda

28  /StaticContent/201510/Statement_1100.html

1  modification of the website, and subject all future modifications of the website to

2  approval by Defendants.  (*Id*.).

3        Before filing this lawsuit, Harbor Freight made a concerted attempt to meet

4  and confer with Defendants about this claim.  Harbor Freight inquired who the

5  plaintiffs were, what their disabilities are, the nature of the alleged barriers, and

6  what records Harbor Freight was expected to retain.  (*Id*. at ¶ 16).  A copy of the

7  email sent by Harbor Freight to Defendants is attached to the Complaint.  (Dkt. 1-2).

8  This information was material to Harbor Freight's ability to investigate the claims

9  asserted in Defendants' letter.  For instance, Defendants' letter claims that the

10  claimants that Defendants represent include those with "*blindness and low vision,*

11  *deafness and hearing loss, learning disabilities, cognitive limitations, mobility*

12  *impairments, speech disabilities, photosensitivity and combinations of these.*"  (Dkt.

13  1-1 at ¶ 14, Exh. 1-1 at 2) (emphasis added).  The Website is complex and multi-

14  layered and, in light of the lack of specificity and Defendants' reliance on an

15  unimplemented standard, Plaintiff does not know what information it is allegedly

16  obligated to preserve as a result of Defendants' demand.  (*Id*. at ¶ 4).

17        It is Defendants' practice not to respond to these inquiries and, in fact, they

18  did not respond to Harbor Freight.  (*Id*. at ¶ 17).  As a result, Harbor Freight was

19  forced to file this action for a determination of its obligations under the ADA in an

20  effort to finally determine the compliance of its website under the ADA and ward

21  off Defendants' demand for fees.

22        Revealing the magnitude of Defendants' hypocrisy, Harbor Freight visited the

23  website of the Carlson Lynch firm looking for guidance in determining how Harbor

24  Freight's website allegedly violated the ADA as asserted by Defendants' demand

25  letter.  (Dkt. 1-2).  As a law firm, Carlson Lynch is a "public accommodation"

26  subject to the same requirements as the businesses they send these letters to.  28

27  C.F.R. § 36.104 (public accommodation defined to include office of a lawyer).  To

28  the extent Defendants are correct that the WCAG standards are mandated, Carlson

1   Lynch's website fails to comply with those same standards.  (Dkt. 1-2).  Defendants
2   refused to respond to Harbor Freight's inquiries on why Harbor Freight's website
3   supposedly violated the ADA, but Carlson Lynch's website did not.

4       Following Defendants' refusal to respond, Harbor Freight filed this
5   declaratory lawsuit.

6   ## III.   LEGAL STANDARD

7       Defendants seek relief in Federal Court based on California State statutory
8   grounds.  Federal courts have held that California anti-SLAPP motions brought at
9   the pleading stage are subject to the Rule 12 standard.  *See Rogers v. Home*
10  *Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999); (citing *Bulletin*
11  *Displays, LLC v. Regency Outdoor Advertising, Inc.*, 448 F.Supp.2d 1172, 1180
12  (C.D. Cal. 2006) ("[s]pecial procedural rules apply where an anti-SLAPP motion is
13  brought in federal court"); *see also Carr v. Asset Acceptance, LLC*, 2011 WL
14  3568338, at *3 (E.D. Cal. Aug. 12, 2011); *Flores v. Emerich & Fike*, 2007 WL
15  963282, at *5 (E.D. Cal. Mar. 29, 2007) *aff'd*, 385 F. App'x 728 (9th Cir. 2010)
16  (citing *Rogers* with approval).

17  ## IV.   THE COURT SHOULD DENY THE SPECIAL MOTION TO STRIKE

18      Section 425.16 requires a trial court to undertake a two-step process when
19  ruling on an anti-SLAPP motion.  *See, e.g., Navellier v. Sletten*, 29 Cal. 4th 82, 88
20  (2002); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002).  First, the court
21  decides whether the defendant has made a threshold showing that the challenged
22  cause of action is one arising from protected activity.  *Navellier*, 29 Cal. 4th at 88.
23  "A defendant meets this burden by demonstrating that the act underlying the
24  plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision
25  (e)."  *Id.*, quoting, *Braun v. Chronicle Pub. Co.*, 52 Cal. App. 4th 1036, 1043
26  (1997).  If the court finds that the defendant has made this requisite showing, the
27  court must then determine whether the plaintiff has demonstrated a probability of
28  prevailing on the claim.  *Navellier*, 29 Cal. 4th at 88.  In order to establish the

requisite probability of prevailing, the plaintiff need only have stated and substantiated a legally sufficient claim.  *Id.*  "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff credited."  *Id.* at 88-89 (quotations omitted).  In this process, the court does not weigh any of the evidence or make any determination of credibility.  *Kashian*, 98 Cal. App. 4th at 906.  If the analysis reaches the second prong, "the plaintiff need only establish that his or her claim has 'minimal merit' to avoid being stricken as a SLAPP."  *Soukap v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291 (2006).  Conflicting evidence is resolved in Harbor Freight's favor.  *Id.* at 291.

Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken by the statute.  *Navellier*, 29 Cal. 4th at 89.

Here, Defendants cannot make the requisite showing that any of Harbor Freight's claims are subject to an anti-SLAPP motion.  First, Harbor Freight's claims do not arise from any protected activity under Section 425.16(e).  Second, Harbor Freight has stated and substantiated far more than a prima facie showing of facts to support its claims.

Therefore, Defendants' anti-SLAPP motion fails both prongs of the test under California law, and their special motion to strike must be denied.

A.   **Defendants Have Not Met Their Threshold Showing That The Demand Letter Constitutes Protected Speech.**

Defendants erroneously assert that "it is beyond dispute" that Harbor Freight's Unfair Competition Law ("UCL") cause of action is subject to the SLAPP statute.  Defendants apparently misunderstand the nature of Harbor Freight's suit.

Defendants wrongly state that this cause of action is "predicated on the Law Firm Defendants' Demand Letter to Harbor Freight *on behalf of visually impaired*

*clients* alleging violations of the ADA."  (Dkt. 18 at 8).  The notion that Defendants sent a demand letter on behalf of anyone other than themselves is precisely the question Harbor Freight's lawsuit has put at issue.

Harbor Freight believes that Defendants send their demand letters asking for money, including the one sent to Harbor Freight, without any "client" ever having experienced an alleged grievance.  Before filing, Harbor Freight knew the following facts:

1)  Defendants have sent dozens of identical form letters to retailers making substantially similar allegations regarding those retailers' websites;  (Declaration of Gregory Hurley, ¶¶ 4-5).

2)  Defendants refused to disclose the identity of the clients they claimed to represent;  (*Id*. at ¶ 7).

3)  Defendants refused to disclose the date of their purported clients' attempts to access Harbor Freight's website;  (*Id*.).

4)  Defendants refused to disclose the nature of the specific disabilities of their alleged "clients"; where the letter identified a broad range of alleged disabilities;  (*Id*., Exh. A).

5)  Defendants refused to disclose the specific web pages that their clients were purportedly unable to access;  (*Id.*).

6)  Defendants refused to disclose the goods and services that their clients were unable to access; and (*Id*.).

7)  The letter simply repeated a series of alleged "barriers" which appear to be an automated list based upon a scan of Harbor Freight's website and included a "settlement agreement" with no client identified, and as a result, no proposed release from any client in such a settlement.  (*Id*. at Exh. A).

The clear inference from this evidence is that there was no "client" who had retained Defendants to pursue a claim against Harbor Freight prior to their making of a demand for payment of money and other remedies.  The implication is that such

1  demand was made fraudulently and was made without having actually been

2  previously retained by any client to do for the purpose of improperly obtaining

3  financial gain from Harbor Freight under the guise of pursuing a legal remedy on

4  behalf of an actual client.

5      In support of Defendants motion, they submit a declaration from Bruce

6  Carlson which recites the standard, without any foundational facts, for application of

7  the litigation privilege.  (Dkt. 21 at ¶ 3).  Glaringly lacking from Mr. Carlson's

8  declaration is the submission of any evidence that any of the Defendants were

9  retained by any client before sending the demand letter in this case.  Instead, the

10  declaration artfully declines to make any connection between the action filed by

11  Michelle Sipe and R. David New on March 16, 2016 (the "Pennsylvania Action")

12  and the demand letter.

13      A closer examination of the facts reveals why:

14      First, the demand letter recites broadly that Defendants represent those with

15  "blindness and low vision, deafness and hearing loss, learning disabilities, cognitive

16  limitations, mobility impairments, speech disabilities, photosensitivity and

17  combinations of these."  (Dkt. 1-1 at 2).  However, the plaintiffs in the Pennsylvania

18  Action only claim to be "legally blind."  (Dkt. 21 at 8, ¶¶ 10-11).  In addition, the

19  Defendants' motion misleadingly suggest that the demand letter was sent only on

20  behalf of "visually impaired" clients.  (Dkt. at 8).  The conclusion to be drawn from

21  this is that Defendants' form letter covers potentially everyone and then they look to

22  match an appropriate plaintiff at a later date.  Moreover, Defendants obviously were

23  not representing clients who had alleged concerns with Harbor Freight's website

24  concerning these alleged disabilities.

25      Second, the complaint in the Pennsylvania Action fails to disclose the dates

26  that the plaintiffs supposedly attempted to access the website.  The complaint only

27  vaguely alleges: "Plaintiffs have patronized Defendant's website in the past, and

28  intend to continue to patronize Defendant's Website."  (Dkt. 21 at 6, ¶ 4).

Case No.  16-cv-1438-AB-SS

1    Defendants intentionally would not have alleged when Ms. Sipe or Mr. New
2    purportedly attempted to access the website if that occurred after the date of the
3    demand letter.

4         Taken together, the clear inference of these facts is that at the time the
5    demand letter was sent, there was no client who had retained Defendants to assert
6    this claim.  The declaration submitted by Defendants in support of their motion to
7    strike utterly fails to refute Plaintiff's allegations.  *Brill Media Co., LLC v. TCW*
8    *Group, Inc.*, 132 Cal. App. 4th 324, 330-31 (2005) (disapproved on other grounds in
9    *Simpson v. Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, n. 3 (2010) (burden on
10   defendant to prove that plaintiff's lawsuit *arises from* defendant's exercise of free
11   speech or petition rights by reliance on pleadings and affidavits); *Jay v. Mahaffey*,
12   218 Cal. App. 4th 1522, 1536 (2013) (trial court did not abuse discretion in
13   excluding declarations containing new evidence filed with defendant's reply
14   papers).  Defendants have failed to meet their burden to introduce any *facts* that
15   establish they were retained by an actual client who had experienced an actual
16   grievance with respect to Harbor Freight's website.

17        As a result, the claimed basis for the letter sent by Defendants to fall within
18   the purview of the SLAPP statute simply does not exist.  The absence of an actual
19   client with a legitimate grievance precludes a finding that the "speech or petition"
20   arose out of protected activity.  Without an actual client who wishes to petition the
21   court for redress, there is no lawful exercise of petition or speech implicated.  All of
22   the case law cited by Defendants involve an actual, disclosed, client on whose
23   behalf a demand letter was actually sent.

24        Defendants cannot cite any authority that a demand letter sent on behalf of a
25   phantom client is protected speech under the SLAPP statute.

26
27
28

**B.** __The Pre-Lawsuit Demand Was Not Sent For The Purpose Of Resolving A Real Dispute.__

Even if the Court rules that Defendants letter constitutes protected speech, Harbor Freight has shown it has a probability of success proving that the litigation privilege does not attach or immunize Defendants from suit.

In order for the litigation privilege to attach to a pre-lawsuit communication, four elements must be met.  First, the communication must have been made preliminary to a proposed judicial or quasi-judicial proceeding.  Second, the proposal of litigation must be made in good faith.  Third, the contemplated litigation must be imminent.  Fourth, the litigation must be proposed for the purpose of resolving a dispute.  *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 34-35 (1997); *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1251-52 (2007).

"As seen, the justification for the litigation privilege is assuring freedom of access to the courts.  Access to the courts is not an end in itself.  *Clearly, there is no public policy favoring litigation for its own sake.  The civil courts exist as a means of settling disputes between people,* for the larger purpose of insuring social peace.  Thus, *the fundamental purpose of the privilege is to provide a means for people to resolve their disputes* without fear of an unending roundelay of litigation."  *Edwards*, 53 Cal. App. 4th at 35-36.

"Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact."  *Action Apartment*, 41 Cal. 4th at 1251; *e.g., Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1381 (1999) (trial court erred in granting summary judgment on basis of litigation privilege because it remained a triable issue of fact as to whether imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving a dispute).

Harbor Freight has pleaded, and substantiated, a claim that Defendants did not send a pre-litigation letter on behalf of any client *for the purposes of resolving a dispute* between such *a client* and Harbor Freight. Harbor Freight has put forth a prima facie showing that, in fact, there was no client who had a real dispute with Harbor Freight's website. The litigation privilege does not attach to communications where there was no actual dispute to be resolved. The evidence suggests that Defendants made this demand (as they have others) in order to enrich themselves.

At the very minimum, Harbor Freight has put forth sufficient evidence—that has been unrebutted by Defendants—to create a triable issue of fact on its claim and should be entitled to proceed with discovery.

## C.   Conduct That Is Illegal As Matter Of Law Is Not Protected By The SLAPP Statute Or The Litigation Privilege.

Section 425.16 is intended "to prevent the chilling of the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' by 'the abuse of the judicial process. As a necessary corollary to this statement, because not all speech or petition activity is constitutionally protected, not all speech or petition activity is protected by section 425.16." *Flatley v. Mauro*, 39 Cal. 4th 299, 313 (2006) (citations omitted).

In *Flatley*, the California Supreme Court recognized that conduct that was illegal as a matter of law is not entitled to protection under the SLAPP statute or the litigation privilege. *Id*. at 333. In *Flatley*, a lawyer sent a pre-litigation demand on behalf of his named client letter that threatened to publicly accuse Mr. Flatley of rape and warned that an in-depth investigation would be conducted into his personal assets and any information would be reported to the IRS and other governmental authorities *unless* Mr. Flatley agreed to settle. *Id*. at 328-332. The court found that such extortionist conduct did not warrant protection under the SLAPP statute or the litigation provision.

Many courts have followed *Flatley* in concluding that the underlying prelitigation communication was illegal as a matter of law and, therefore, the defendant could not strike the complaint under the anti-SLAPP law. *Stenehjem v. Sareen*, 226 Cal. App. 4th 1405 (2014) (reversing grant of special motion to strike and finding that veiled threats to report plaintiff's alleged criminal wrongdoing to authorities unless plaintiff agreed to settlement was not entitled to protection under SLAPP statute); *Cohen v. Brown*, 173 Cal. App. 4th 302 (2009) (rejecting application of litigation privilege where defendant threatened to report plaintiff to state bar if he did not sign off on settlement check); *Mendoza v. Hamzeh*, 215 Cal. App. 4th 799 (2013) (demand letter constituted extortion as a matter of law because it involved a threat to report criminal conduct coupled with a demand for money).

At least three other cases have extended *Flatley* to conclude that that protections of 425.16 were unavailable because the moving party's alleged conduct was illegal as a matter of law and therefore not protected activity under the anti-SLAPP statute. *E.g., Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696 (2011) (claim based on filing of false police report); *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435, 445-47 (2011) (invasion of privacy claims); *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 143 Cal. App. 4th 1284, 1296-1296 (2006) (claims based upon conspiracy to commit acts of vandalism and harassment).[3]

---

[3] Defendants cite to *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 911 (2004) for the proposition that any "communications made in connection with litigation because they are, or alleged to be, fraudulent, perjurious, unethical, or even illegal assuming they are logically related to the litigation." (Dkt. 18 at 9). However, in a later decision, the California Supreme Court specifically addressed and rejected Defendants' position—concluding that where the demand letter was, in fact, illegal, it was unprotected by the SLAPP statute. *Flatley*, 39 Cal. 4th at 325 n. 12.

Therefore, the litigation privilege does not extend to communications such as the ones made by Defendants here.  It is wrongful to threaten to file a lawsuit and seek a settlement on behalf of client that does not exist.

California in particular has been inundated with nearly identical sorts of ADA claims in the architectural barrier access arena by unscrupulous attorneys and plaintiffs.  As a result,  California prohibits the type of letter sent by Defendants here.  Pursuant to Civil Code § 55.31(b), an attorney must provide a "written advisory" with each pre-litigation demand letter sent to a defendant for any construction-related accessibility claim.  Prelitigation demand letters alleging a violation of one or more construction-related accessibility standards must include a "plain language explanation of the specific access barrier or barriers the individual encountered," the "the way in which the barrier encountered interfered with the individual's full and equal use or access, in which it deterred the individual, on each particular occasion," and "the date or dates of each particular occasion on which the individual encountered the specific access barrier, or on which he or she was deterred," and *may not include a demand for money*.  A demand letter must be provided whether or not the attorney intends to file a lawsuit.  Civ. Code §§ 55.3(a)(4), 55.31.  The attorney must also provide copies of the letter to the State Bar and to the California Commission of Disability Access.  Failure to comply with these requirements constitutes cause for professional discipline.  Civ. Code §§ 55.3(a)(4), 55.31, 55.32(2), Bus. & Prof. Code § 6106.2.

Defendants are following a well-tread playbook that this Court should not condone.  Harbor Freight has met its burden to show that it has a probability of proving to the Court that the litigation privilege does not apply by virtue of the wrongful nature of the communication.

**V.    CONCLUSION.**

For all of the foregoing reasons, Harbor Freight respectfully requests that the Court deny Defendants Special Motion to Strike the second cause of action in Harbor Freight's complaint.

Dated:  April 18, 2016

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____/s/ Gregory F. Hurley_____
                GREGORY F. HURLEY

Attorneys for Plaintiff,
HARBOR FREIGHT TOOLS USA, INC.