**VALLE MAKOFF LLP**
JEFFREY B. VALLE (State Bar No. 110060)
 jvalle@vallemakoff.com
JENNIFER LASER (State Bar No. 192700)
 jlaser@vallemakoff.com
11911 San Vicente Blvd., Suite 324
Los Angeles, California 90049
Telephone:  (310) 476-0300
Facsimile:  (310) 476-0333

Attorneys for Defendants
Carlson Lynch Sweet and Kilpela LLP, Kamberlaw,
LLC, Benjamin J. Sweet and R. Bruce Carlson

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARBOR FREIGHT TOOLS USA, INC.<br><br>            Plaintiff,<br><br>v.<br><br>CARLSON LYNCH SWEET and KILPELA LLP; KAMBERLAW, LLC; BENJAMIN J. SWEET; R. BRUCE CARLSON;  and SCOTT A. KAMBER<br><br>            Defendants. | Case No. 16-cv-1438-MRW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>[Supplemental Declarations of Bruce Carlson Esq. and Jeffrey Valle, Esq., Declaration of R. David New, and Request for Judicial Notice in Support of this Reply are Filed Concurrently Herewith]<br><br>Hearing Date:  May 9, 2016<br>Time:           10:00 a.m.<br>Courtroom:      4<br><br>Complaint Filed:  March 1, 2016<br>Trial Date:       None Set |

## I.     INTRODUCTION

Plaintiff Harbor Freight Tools USA, Inc.'s ("Harbor Freight") Opposition to the Attorney Defendants' Special Motion to Strike ("Motion to Strike") is reprehensible in several ways. Its arguments are so meritless, it would appear that Harbor Freight is trying to mislead this Court about the California Anti-SLAPP law and its application to this case. In addition, Harbor Freight maliciously casts the Attorney Defendants – who are reputable ADA attorneys advocating for the rights of the disabled individuals – in a shamefully negative and false light, designed to distract the Court from the frivolous and SLAPP nature of this lawsuit.[1]

Stripped of the Harbor Freight's speculative and false allegations regarding a "phantom" client and its disgraceful mockery of the Attorney Defendants' ADA enforcement practice, the Opposition does nothing to rebut the key legal issues raised in the Motion to Strike – *i.e.* that the pre-litigation Demand Letter sent by the Attorney Defendants to Harbor Freight is subject to the anti-SLAPP statute and is absolutely privileged under California law. *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 911 (2004). The Attorney Defendants respectfully request that the Court strike Harbor Freight's invalid UCL claim under Section 425.16(b)(1) of the California Code of Civil Procedure.

## II.    THE PRE-LITIGATION DEMAND LETTER CONSTITUTES PROTECTED SPEECH UNDER THE ANTI-SLAPP STATUTE

Harbor Freight disparages the Attorney Defendants' practice by calling it "vexatious ADA litigation," and "ADA drive by suits." (Opposition at 1). It

---

[1] This Motion to Strike was filed on March 29, 2016, by the law firm defendants (Carlson Lynch Sweet and Kilpela LLP and Kamberlaw LLP). On April 6, 2016, Plaintiff filed proofs of service showing that it purportedly served the individual defendants Sweet and Carlson with the complaint in this action. Thus, on April 11, 2016, defendants Sweet and Carlson joined in this Motion to Strike. Defendant Kamber has never been served in this case. Throughout this Reply, the "Attorney Defendants" shall refer to the law firm defendants and the individual defendants who brought or joined in this Motion to Strike.

speculates that the Attorney Defendants sent pre-litigation letters on behalf of "phantom" clients, solely to enrich themselves, and argues that the Demand Letter is not covered by the California anti-SLAPP statute because it does not constitute protected speech. The factual premises for Harbor Freight's argument are demonstrably false, and Harbor Freight's legal arguments are meritless and must be rejected. The Demand Letter is precisely the type of protected speech that the Anti-SLAPP statute was designed to shield from this improper retaliatory lawsuit.

### A. The Attorney Defendants' Practice Is Devoted to Seeking Equal Access for Their Disabled Clients

What Harbor Freight derisively refers to as the Attorney Defendants' "business model" is in reality an ADA enforcement practice on behalf of persons with disabilities – empowered by Congress, applauded by the disabled community, and supported by those who believe that the disabled individuals should enjoy equal access to goods and services. *Oregon Paralyzed Veterans of America v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1133 (9th Cir. 2003) ("One of the central goals of Title III of the ADA is to ensure that people with disabilities have access to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations…"); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act").

Long before the Attorney Defendants sent the Demand Letter to Harbor Freight, they were retained by Michelle Sipe, R. David New and Access Now (a non-for-profit organization dedicated to seeking equal access for its 4,500 disabled members) to investigate and pursue claims against companies, such as Harbor Freight, whose websites are not fully accessible to customers who are blind or visually impaired. (Supplemental Declaration of Bruce Carlson ["Carlson Supp. Decl."] ¶ 3; Declaration of R. David New ["New Decl."] ¶ 3). The Attorney

Defendants were also retained by persons with other forms of disability, to investigate various architectural barriers that deprive those individuals of equal access to goods and services; however, the Attorney Defendants' recent ADA enforcement efforts have focused on the accessibility of websites to blind and visually impaired. (Carlson Supp. Decl. ¶ 4). There is nothing "phantom" about these clients, their disabilities, their desire for equal access to internet websites, or their requests that the Attorney Defendants investigate and bring claims on their behalf to seek the removal barriers to access. (*Id.*).

It is a common practice for the Attorney Defendants to send out pre-litigation demand letters to non-compliant companies and seek an out-of-court resolution, which necessarily includes improving accessibility for their disabled clients. (*Id.* ¶ 5). When necessary to enforce those clients' rights, the Attorney Defendants bring court actions, seeking injunctive relief. (*Id. ¶* 6). The courts have often consolidated these ADA cases, to achieve consistent and efficient adjudication and, whenever possible, a consistent and efficient resolution of these disputes. (*Id.*)

Judge Arthur J. Schwab of the District Court for the Western District of Pennsylvania has recently presided over fifteen consolidated ADA cases brought by the Attorney Defendants on behalf of the blind and visually-impaired individuals. Last week, Judge Schwab issued an Order, in which he praised the Attorney Defendants' work on those cases, which were resolved within nine months from the date the Attorney Defendants filed the first case. (Request for Judicial Notice ["RJN"], Exhibit 1 at 4-5). It is clear that Judge Schwab does not share Harbor Freight's and its counsel's view that these ADA actions are "drive by suits." To the contrary, Judge Schwab states in his Order that the Attorney Defendants "worked professionally" with defense counsel, "did not over-litigate these cases in order to have the potential of greater fees," and promoted the resolution of those cases in a "just, speedy, and inexpensive manner." (*Id.* at 5).

Notably, Harbor Freight's counsel, Gregory Hurley, was one of the defense counsel in those consolidated cases, representing Toys 'R Us, and was, therefore, aware of the Attorney Defendants' practice of seeking the resolution of these cases in "the just, speedy and inexpensive" manner. (*Id.* at 6). Notwithstanding that experience and the benefits his clients had received from the resolutions of those cases, Harbor Freight's counsel infuses its Opposition with hostile, disparaging and false personal attacks on the Attorney Defendants and their ADA practice.

**B.    The Attorney Defendants Sent Harbor Freight the Demand Letter and Subsequently Filed an ADA Action Against It To Improve the Accessibility of Its Website for Their Disabled Clients**

The Demand Letter send by the Attorney Defendants to Harbor Freight was typical of their pre-litigation demand letters sent to non-compliant companies, seeking improvements to their websites. (Carlson Supp. Decl. ¶ 5). The Demand Letter was sent on behalf of Ms. Sipe, Mr. New and Access Now, even though these clients were not referenced in the Demand Letter by name. (Carlson Supp. Decl. ¶ 5; New Decl. ¶ 4). As previously mentioned, Harbor Freight's counsel, Gregory Hurley, is familiar Access Now, its disability advocacy work, and the attorney-client relationship between Access Now and the Attorney Defendants. (Carlson Supp. Decl. ¶ 7). Mr. Hurley has served as defense counsel in half a dozen ADA lawsuits brought by the Attorney Defendants on behalf of Access Now, and its members. (*Id.*). Accordingly, Harbor Freight's rhetoric regarding "phantom" client is false, and Mr. Hurley must know that it is false.

There can be no doubt that the Demand Letter was sent in anticipation of litigation since, as soon as it became clear that Harbor Freight was not interested in the pre-litigation resolution, the Attorney Defendants filed the ADA case against Harbor Freight in the United States District Court for the Western District of Pennsylvania on behalf Michelle Sipe, R. David New and Access Now. This

Pennsylvania ADA case was consolidated with seven other similar cases, pending in that district court. (RJN, Exh. 1 at 5).

### C. The Demand Letter is Precisely the Type of Constitutionally-Protected Speech the SLAPP Statute Was Designed to Protect From Retaliatory Lawsuits

The present action is a classic SLAPP suit that the California anti-SLAPP statute was meant to terminate at a pleading phase. It was filed in retaliation for Attorney Defendants' Demand Letter to Harbor Freight, with the obvious purpose of harassing the Attorney Defendants, and discouraging them and their disabled clients from pursuing the ADA claims. Harbor Freight even tried to get the Pennsylvania ADA action dismissed by arguing that the Pennsylvania Court should give preference to this frivolous California action because it was "first filed." In denying that motion, Judge Schwab issued a lengthy, detailed Order, in which he noted that Attorney Hurley filed this California action with the purpose of "(1) harassing Plaintiffs' counsel, and (2) possibly making the rights of the blind and visually impaired [] more difficult to enforce." (RJN, Exh. 1 at 6 & 9).

As the Order makes clear, there is no doubt in Judge Schwab's mind that the Attorney Defendants' pre-litigation Demand Letter was a reasonable and efficient attempt to resolve the accessibility issues relating to the Harbor Freight's website, and that Harbor Freight's and its attorney's decision to file this SLAPP suit against the Attorney Defendants was designed to thwart those efforts:

> Attorney Hurley's decision to file the California Lawsuit after receiving a pre-litigation letter from the very same law firm who represented blind and visually impaired clients against this client, Toys 'R Us, for its alleged non-ADA compliant website, is disingenuous at best, and in bad faith at worse. The pre-litigation letter placed Harbor Freight on notice that its website was allegedly

|   |   |
|---|---|
| 1 | non-ADA complaint for blind and visually impaired individuals, and |
| 2 | Attorney Hurley upon receipt of that letter, instead of assisting his |
| 3 | client, Harbor Freight, by speedily and inexpensively achieving the |
| 4 | same result he obtained through court-ordered mediation for his Toys |
| 5 | 'R Us client, opted to initiate another federal lawsuit in a different, |
| 6 | inflicting substantial litigation costs upon his client, Harbor Freight. |
| 7 | … These practices certainly violate the spirit and the letter of the law |
| 8 | as set forth in F.R.Civ.P. 1. |

(RJN, Exh. 1 at 7). Harbor Freight's conduct also violates the spirit and the letter of California SLAPP statute. Lest there be any doubt about Harbor Freight's retaliatory motive, Gregory Hurley's letter to one of the Attorney Defendants attaching the complaint and stating – "Before we proceed with prosecuting this action I wanted to see if you were interested in a settlement of the claims stated on your [demand] letter to Harbor" – makes Harbor Freight's and Mr. Hurley's motives perfectly clear. (Declaration of Bruce Carlson ¶ 4, Docket No. 21).

Numerous cases have applied California anti-SLAPP statute to pre-litigation demand letters, holding them to be "an exercise of [] constitutional right to petition to seek redress of grievances protected by the anti-SLAPP statute." *Blanchard*, 123 Cal. App. 4th at 918; *see also Marlin v. Singer*, 217 Cal. App. 4th 1283, 1293 (2013) ("a demand letter that was written by an attorney on behalf of his client in anticipation of litigation is a legitimate speech or petition activity that is protected under section 425.16"). This case is no different. The Demand Letter sent by the Attorney Defendants to Harbor Freight is legitimate petition activity protected under Section 425.15 of the California Code of Civil Procedure.

### III. THE DEMAND LETTER IS ABSOLUTELY PROTECTED BY THE LITIGATION PRIVILEGE

Harbor Freight advances several arguments as to why the Demand Letter sent

1  by the Attorney Defendants is not subject to the broad litigation privilege under
2  California Civil Code Section 47(b). All of those arguments are specious.

3      A. **The Demand Letter Did Not Misrepresent Harbor Freight's ADA**
4          **Compliance Obligations, and, In Any Event, Such Representations**
5          **Are Privileged**

6      Harbor Freight claims that the Attorney Defendants "knowingly misrepresent
7  the obligations of the business in complying with the ADA." (Opposition at 3:18).
8  That is incorrect. The Demand Letter is accurate, and it is Harbor Freight who is
9  misleading this Court about the purported "uncertainty" regarding Harbor Freight's
10 ADA obligations. The question of whether Harbor Freight's website must comply
11 with the ADA is settled in this district. In *Weyer v. Twentieth Century Fox Film*
12 *Corp.,* the Ninth Circuit held that the ADA is applicable to a website where there is
13 "some connection between the good or service complained of and an actual
14 physical place…" 198 F.3d 1104, 1114 (9th Cir. 2000). Based on this interpretation
15 of the ADA, the Central District of California recently certified a class of web users
16 with the disabilities challenging the accessibility of Disney's website. *Shields v.*
17 *Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529 (C.D. Cal. 2011).

18     Most importantly, Harbor Freight's disagreement with the merits of the ADA
19 claim set forth in the Demand Letter does not render that letter any less privileged.
20 California law is clear that a pre-litigation demand letter is absolutely privileged
21 even if the statements in that letter were misleading. *Blanchard*, 123 Cal. App. 4th
22 at 921. The Demand Letter is certainly no less privileged just because Mr. Hurley
23 has a contrary view on the merits of the ADA claim set forth in that letter – the
24 view that has been rejected by many courts. *See, e.g., Shields*, 279 F.R.D. 529.

25     B. **The Demand Letter Was Sent For the Express Purpose of**
26         **Resolving an ADA Dispute Prior to the Litigation**

27     Harbor Freight also argues that the Demand Letter is not privileged because
28

the litigation privilege "does not attach to communications where there was no actual dispute to be resolved." This argument is meritless. As previously discussed, at the time the Attorney Defendants sent the Demand Letter, there was an actual dispute between their clients, Sipe, New and Access Now (and Access Now's disabled members), on the one hand, and Harbor Freight, on the other. (Carlson Supp. Decl. ¶ 5; New Decl. ¶¶ 3-4). Those clients retained the Attorney Defendants to investigate the ADA violations and send out the demand letters seeking remediation, which is precisely what the Attorney Defendants did in this case. (*Id.*) The Attorney Defendants had recently settled fifteen similar ADA disputes in the manner that the Judge in those cases described as "just, speedy and cost-effective" (RJN, Exh. 1 at 6), and they were offering Harbor Freight an opportunity to resolve this dispute in a similar manner. As Judge Schwab noted, seeking pre-litigation solutions by issuing demand letters is clearly "the most expedient and cost-effective means of resolving legal matters." (*Id.* at 7).

The Demand Letter in this case is a classic example of a pre-litigation communication bearing direct relationship to the actual lawsuit, and is absolutely privileged under Section 47(b). *Blanchard*, 123 Cal. App. 4th at 921.

IV. **THE DEMAND LETTER IS NOT ILLEGAL AS A MATTER OF LAW**

Harbor Freight's final argument is that the Demand Letter is not subject to the SLAPP statute because it is illegal as a matter of law. It analogizes the Attorney Defendants' ADA enforcement practice and the Demand Letter sent in this case to an illegal extortion. This analogy is disgraceful.

In *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), the California Supreme Court carved out a "narrow exception" to the general rule that a demand letter sent in anticipation of litigation is a legitimate petitioning activity that is protected under section 425.16 for those "extreme" cases where a demand constitutes "criminal extortion as a matter of law." *Marlin,* 217 Cal. App. 4th at 1293-94. Under

California law, criminal extortion is defined as "obtaining of property from another … induced by a wrongful use of force or fear" (CAL. PEN. CODE §518) through threat of accusing an individual threatened of a crime, or of exposing or imputing to him any deformity, disgrace or crime (*Id.* §519). Thus, in applying the *Flatley* exception, California courts have declined to apply Section 425.16 in those rare cases where a demand for money was coupled with a threat of reporting criminal actions to the authorities or other misconduct that qualifies as criminal extortion under Section 519. *See Stenehjem v. Sareen*, 226 Cal. App. 4th 1405 (2014) (threatened to file a criminal claim and expose to federal authorities); *Mendoza v. Hamzeh,* 215 Cal. App. 4th 799 (2013) (threatened to report to criminal authorities and IRS); *Cohen v. Brown*, 173 Cal. App. 4th 302 (2009) (threatened to report and did report to the state bar).

The *Flatley* exception has no relevance to this case. The Demand Letter sent to Harbor Freight did not threaten to report Harbor Freight to the criminal authorities or to expose it for any disgrace or crime. (Complaint, Exh. 1, Dkt No. 1). Harbor Freight does not even attempt to explain how the Demand Letter meets the definition of criminal extortion under Section 519, and it plainly does not.

The Opposition goes so far as to suggest that the Attorney Defendants have engaged in criminal misconduct, analogizing their ADA enforcement practice to cases where defendants filed a false police report or conspired to commit acts of vandalism and harassment. (Opposition at 13:12-20). These analogies are shameful and serve no legitimate purpose but to disparage the Attorney Defendants.[2]

---

[2] The last page of the Opposition discusses California Civil Code sections dealing with construction-related accessibility claims. (Opposition at 14). This case does involve construction-related claims, and these code sections are not mentioned in Harbor Freight's Complaint. Thus, this discussion appears to be irrelevant and should be disregarded.

## V. THE ATTORNEY DEFENDANTS ARE ENTITLED TO AN AWARD OF THEIR ATTORNEY'S FEES AND COSTS

As discussed in the Motion to Strike, a "prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." CAL. CIV. PROC. CODE § 425.16(c) (emphasis added). The Attorney Defendants' counsel and paralegal have expended approximately 37.5 total hours preparing the Motion to Strike, the supporting declarations and documents, the individual defendants' Joinder in the Motion to Strike and this Reply in support of the Motion to Strike, along with the supporting declarations and other documents, at a total cost of no less than $19,162.50. (Supplemental Declaration of Jeffrey B. Valley ¶ 2-5).

## VI. CONCLUSION

There is no question that the Attorney Defendants sent the Demand Letter to Harbor Freight on behalf of their disabled clients, in anticipation of the ADA litigation that was subsequently filed. Accordingly, the Demand Letters constitute a legitimate petition activity protected under Section 425.15 of the California Code of Civil Procedure. Because this Demand Letter is "absolutely privileged," and Harbor Freight has zero probability of prevailing on its UCL claim, the Court should strike the UCL claim under California Code of Civil Procedure Section 425.16, and issue an award of attorney's fees and costs in the amount of $19,162.50.

Dated: April 25, 2016                **VALLE MAKOFF LLP**

By: __/s/Jeffrey Valle__
JEFFREY B. VALLE

Attorneys for Defendants Carlson Lynch Sweet and Kilpela LLP, Kamberlaw LLC and Benjamin J. Sweet and R. Bruce Carlson

# PROOF OF SERVICE

I declare that I am over the age of eighteen years and that I am not a party to this action. I am an employee of Valle Makoff LLP, and my business address is 11911 San Vicente Blvd., Suite 324, Los Angeles, California 90049.

On the date set forth below, I served the following document(s) described as follows:

**REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**

on the interested parties in this action as follows:

**Attorneys for Plaintiff**
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
GREGORY F. HURLEY
MICHAEL J. CHILLEEN
BRAD LEIMKUHLER
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993

**Email:** MChilleen@sheppardmullin.com,
GHurley@sheppardmullin.com,
bleimkuhler@sheppardmullin.com,
lhall@sheppardmullin.com,
cstrand@sheppardmullin.com

☒ **BY ELECTRONIC TRANSMISSION:** Per the Court's "Electronic Filing and Service Standing Order," I caused the documents to be sent to the persons at the email addresses listed with the Court in this matter.

☒ *(FEDERAL)* I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 25, 2016, at Los Angeles, California.

*/s/Denisse Aguilar*
DENISSE AGUILAR